SUIL J. AND WILLADEAN MOSS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89827.   Filed August 13, 1962.

*J. Gilmer Blackburn, Esq.*, for the petitioners.
*Homer F. Benson, Esq.*, for the respondent.

606

OPINION.

TURNER, *Judge:* It is in our opinion settled law that depreciation deductions in respect of improvements made on leased premises where the lessee has an option either to renew the lease or to purchase

the property are to be based on the useful life of the improvements rather than the period of the lease, if the lessee intends to, and there is reasonable probability that he will, exercise the option to renew the lease beyond the useful life of the improvements, or purchase the property under his option, and thus be assured of their continued use. *Leonard Refineries, Inc.*, 11 T.C. 1000; *Standard Tube Co.*, 6 T.C. 952; *Harry Gleis*, 24 T.C. 941, affd. 245 F. 2d 237; *Kerr-Cochran, Inc.*, 30 T.C. 69; *Pittsburgh Union Stock Yards Co.* v. *Commissioner*, 46 F. 2d 464.

In the *Leonard Refineries, Inc.* case, we said:

Where it appears certain that an option to purchase leased premises will be exercised, over what period should assets on those premises be depreciated? Decisions pertinent to this question deal with a comparable situation where there is a reasonable certainty that a renewal provision in a lease will be exercised. Under those circumstances the courts have held the proper period for taking depreciation is the remaining life of the original term plus the renewal period. *Pittsburgh Union Stock Yards Co.* v. *Commissioner*, 46 Fed. (2d) 646; *1620 Broadway Corporation*, 36 B.T.A. 149, 152; *Standard Tube Co.*, 6 T.C. 952. By analogy, where it is apparently certain that the option to purchase leased land will be exercised, depreciation rates for assets located on such land should be based on their estimated physical lives. As was said in *Rankin* v. *Commissioner*, 60 Fed. (2d) 76, it is only necessary that it appear the lessee's use or occupancy will exceed the life of the improvement. If that requirement is met, then the depreciation should be spread over the full life of the asset.

Petitioner testified that he intended from the beginning to exercise the option to purchase the land if the restaurant proved successful and we are satisfied from the evidence that he was confident that the venture would be a success and that a term of 7 years would provide adequate time for effecting the purchase. It is most unlikely, we think, that he would have considered spending and obligating himself personally to the extent of $54,744.51 in improving the land and $31,886.36 for equipment, limited to an operation of 7 years. Furthermore the regulations have long provided that "the reasonableness of any claim for depreciation shall be determined upon the basis of conditions known to exist at the end of the period for which the return is made." Income Tax Regs., sec. 1.167(b)–O (a), and *Leonard Refineries, Inc.*, *supra*, and the cases cited therein.

At December 31, 1956, the end of the taxable period which included the first 9 months of operation, the balance sheet of Dwarf Restaurant disclosed total assets of $79,317.42, which included current assets of $3,781.07, most of which was merchandise inventory, and fixed assets of $75,421.35, of which $28,497.44 was in equipment and $46,923.91 in the restaurant building and other leasehold improvements. Total liabilities were shown as $63,487.40 and net worth as $15,830.02, which latter amount consisted of petitioner's original investment of $7,351.69 and $8,478.33 shown as the net profits for the first 9 months of operation. In that connection it is to be noted that the $8,478.33 so shown

was after the deduction of depreciation on the leasehold improvements on the basis of the 7-year term of the lease, rather than their useful life. It is to be noted also that with an investment of only $7,351.69 the amount owing on equipment and leasehold improvements had been reduced from $86,630.87, their cost, to, at the most, no more than $61,150.43, which was a reduction in the 9 months' period of 20 percent of total cost. In short, during the first 9 months of operation the business had not only supplied at least $18,123.75 for payment on liabilities incurred in the purchase of fixed assets, but had also supplied $3,781.07 in cash, inventory, and advances to employees.

We accordingly conclude that in entering into the lease it was petitioner's purpose and intention to acquire the land in question, that a term of 7 years was regarded as sufficient for effecting the purchase, and by December 31, 1956, such acquisition was a reasonable certainty.

We hold that the respondent has correctly determined that the leasehold improvements should be depreciated in each of the taxable years over their remaining useful life.

*Decision will be entered under Rule 50.*